UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 19-CV-2819 (ERK) (RER)
_____

WOODSIDE CREDIT, LLC,

Plaintiff,

VERSUS

PRIME CAR SALES, INC. D/B/A ECARS BROOKLYN, ARI RENT A CAR CORP., RENT YOUR OWN 26 LLC, ARIK LEV A/K/A ERIC LEV, IVAN MAG, MATTHEW S. COLELLO, LORETTA WATERS-FALZO, JANE DOES 1-10, JOHN DOES 1-10, DOE BUSINESS ENTITIES 1-20,

Defendants.

_____

**REPORT & RECOMMENDATION**

**February 28, 2020**
_____

TO THE HONORABLE EDWARD R. KORMAN
SENIOR UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Woodside Credit, LLC ("Plaintiff" or "Woodside") brought this diversity action under 28 U.S.C. § 1332(d) for breach of contract, fraud, conversion, and civil conspiracy. After all seven named defendants failed to answer or otherwise defend, the Clerk of the Court entered default against them. (Dkt. Nos. 13–15, 18–19, 26–27). Plaintiff subsequently filed a Motion for Default Judgment. (Dkt. No. 28 ("Mot. for Default J.")). Your Honor referred the Motion for Default Judgment to me for a Report and Recommendation. (Order dated 10/08/2019). For the

1

reasons below, I respectfully recommend the Motion for Default Judgment be denied without prejudice to renewal upon a properly pleaded amended complaint and adequate proof of damages.

## **BACKGROUND**[1]

Woodside is a "financer of classic [ ] and collector cars" based in California. (Dkt. No. 1 ("Compl.") ¶ 2). Defendant Prime Car Sales Inc. doing business as Ecars Brooklyn ("Ecars") is a car dealership incorporated in New York. (*Id.* ¶ 3). Defendants Arik Lev (a/k/a Eric Lev) ("Lev") and Ivan Mag ("Mag") are agents and/or employees of Ecars. (*Id.* ¶¶ 6–7). Defendants Matthew S. Colello ("Colello") and Loretta Waters-Falzo ("Waters-Falzo")[2] (collectively, "the Borrowers") are two individuals who entered into financing agreements with Woodside to purchase vehicles from Ecars. (*Id.* ¶¶ 8–9). Two additional defendants are named in the Complaint: Ari Rent A Car Corp., "a New York corporation with a place of business" in Brooklyn, and Rent Your Own 26 LLC, "a limited liability company formed under the laws of New York. (*Id.* ¶¶ 4–5). Woodside alleges that Lev is "a shareholder, agent, and/or employee of Ari Rent A Car Inc. and a member, agent and/or employee of Rent Your Own." (*Id.* ¶ 6).

In early 2018, Woodside received two applications for loans to purchase vehicles from Ecars. (Compl. ¶¶ 14, 25). One application was for Colello to purchase a 2012 Rolls Royce Ghost (the "Rolls Royce"). (*Id.* ¶¶ 1, 14). The second was for Waters-Falzo to purchase a 2016 Ferrari California (the "Ferrari"). (*Id.* ¶¶ 1, 25). Woodside communicated with Ecars which provided the applications as well as all relevant materials for both Colello and Waters-Falzo. (*Id.* ¶¶ 15, 26).

---

[1] Unless otherwise indicated, the following factual allegations are taken as true. *See Bricklayers Ins. & Welfare Fund v. R. Smith Restoration*, No. 11-CV-3854 (FB) (RER), 2013 WL 2120306, at *2 (E.D.N.Y. Mar. 8, 2013).

[2] While the Complaint brings claims of breach of contract, fraud, conversion, and conspiracy against Waters-Falzo, Woodside "is not pursuing a judgment against defendant Waters-Falzo" due to her pending bankruptcy. ("Mot. for Default J." ¶ 9).

2

Mag was listed as the salesperson on both vehicles' pre-owned purchase agreements.[3] (*Id.*). Woodside approved the financing agreements (*Id.* ¶¶ 19, 27) and wired the agreed upon purchase amounts to Ecars.[4] (Dkt. No. 28-1 ("Trevisan Aff.") ¶¶ 9, 18). "[S]everal payments" were made on each loan before payments suddenly stopped. (Compl. ¶¶ 22, 30). Woodside then discovered that Colello and Waters-Falzo did not take possession of the vehicles. (*Id.* ¶¶ 23(b), 31(b)). Rather, the vehicles were kept by "Mag and/or Lev themselves, either individually or through an entity controlled by Mag and/or Lev." (*Id.* ¶¶ 23(c), 31(c)). Further, Woodside discovered the initial payments on the two loans had not been made by Colello and Waters-Falzo but by "Lev, Mag and/or Ecars." (*Id.* ¶¶ 23(e), 31(e)).

Woodside also alleges that some of the Defendants[5] were "renting [the vehicles] by the day or the week for profit." (Compl. ¶¶ 23(d), 31(d)). After this discovery, Woodside "demanded Lev, Mag, and/or Ecars relinquish possession of the Rolls Royce and the Ferrari to Woodside." (Trevisan Aff. ¶ 24). In response, "Woodside was directed to an attorney representing Lev" who "confirmed that Lev has possession of the Vehicles, and provided recent pictures" of them. (*Id.* ¶ 25).

Woodside subsequently filed this action, alleging breach of contract against Colello for defaulting on his loan. (Compl. Count 1). Further, Woodside alleges Defendants engaged in a civil

---

[3] Woodside also alleges the pre-owned purchase agreement lists Mag as the "agent" of Ecars. (Compl. ¶¶ 15, 26). However, that fact is not reflected in the document. (Dkt. No. 28-3 ("Ex. B")). Given that Woodside fails to make any agency arguments, the allegation remains an unsupported legal conclusion.

[4] Although later, Woodside alleges the wired funds went to Lev, Mag and/or Ecars. (Trevisan Aff. ¶ 47, 53).

[5] The Complaint is imprecise in its identification, alleging that "Mag and/or Lev were renting [the vehicles] . . . through Ari Rent a Car, Rent Your Own, or an entity controlled by Mag and/or Lev, the true identity of which is currently unknown to Woodside." (*Id.*). Nowhere in the Complaint or accompanying material does Woodside provide a basis for this allegation.

3

conspiracy wherein they successfully defrauded Woodside and converted its property. (Compl. Counts 3–7).

## LEGAL STANDARD

In considering default judgment, "the court must accept as true all well-pleaded allegations in the complaint." *Said v. SBS Electronics, Inc.*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at \*2 (E.D.N.Y. Feb. 24, 2010), *R&R adopted as modified by* 2010 WL 1287080 (Mar. 31, 2010). "Even so, 'after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (quoting *Leider v. Ralfe*, No. 01 Civ. 3137, 2004 WL 1773330, at \*7 (S.D.N.Y. July 30, 2004)).

In making the damages determination, the court is not bound by the well-pleaded allegations in the complaint. *Said*, 2010 WL 1265186, at \*2. Rather, after a finding of liability, "[i]t is the court's responsibility to establish that damages have an evidentiary basis that can be ascertained with 'reasonable certainty.'" *Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246 (RJD) (RER), 2019 WL 3716199, at \*2 (E.D.N.Y. May 1, 2019) (citing *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 235 (2d Cir. 2012).

## DISCUSSION

Woodside alleges four causes of action under New York common law: (1) breach of contract, (2) fraud, (3) conversion, and (4) conspiracy. Portions of these claims are sufficiently pleaded for the purposes of a motion for default judgment, most are not. I briefly address the issues

4

with liability. However, the Court need not reach them given Woodside's failure to meet its burden of showing damages for these claims.

### I. Liability

#### A. Breach of Contract

While Woodside's breach of contract claim is inexplicably argued under New York law despite a California choice-of-law clause in the Agreement, (Dkt. No. 28-6 ("Ex. E") at 4), the claim appears to be sufficiently alleged. Under California law "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (citing *Reichert v. General Ins. Co.*, 442 P.2d 377, 381 (Cal. 1968)).

Here, Woodside alleges the existence of a contract between itself and Colello and provides a copy of the Agreement signed by Colello. (Ex. E). Second, Woodside alleges its performance by paying Ecars $148,000. (Trevisan Aff. ¶ 9). Third, Woodside alleges Colello's breach by defaulting on his monthly payments and not keeping the Rolls Royce at his residential address. (Trevisan Aff. ¶¶ 12–13). Fourth, one can infer Woodside was damaged in the amount remaining on the Rolls Royce Agreement.

#### B. Fraud

Woodside's fraud claim is insufficiently pleaded. To plead a claim of fraud, plaintiff must "allege each of the elements of the claim as defined by state law, and must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Dessert Beauty, Inc. v. Platinum Funding Corp.*, No. 06 Civ. 2279 (SAS), 2006 WL 3780902, at *5 (S.D.N.Y. Dec. 26, 2006)

5

(citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). "Rule 9(b) requires that a complaint '[i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent.'" *Corley v. Vance*, 365 F. Supp. 3d 407, 456 (S.D.N.Y. 2019) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).[6] "If a plaintiff fails to satisfy the requirements of Rule 9(b), entry of default judgment should be denied." *3801 Beach Channel, Inc. v. Shvartzman*, No. 05-CV-0207 (CBA) (JO), 2010 WL 6471990, at *3 (Sept. 30, 2010) (citing *Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc.*, No. 07-CV-0608 (RJD) (JO), 2009 WL 1033177, at *1, *8 (E.D.N.Y. Apr. 16, 2009)).

Woodside's allegations are broad and conclusory, failing even to identify statements it claims are fraudulent, much less provide the who, when, where, and why requirements of Rule 9(b). For example, Woodside alleges that "Ecars, Mag, and Colello intentionally and falsely represented to Woodside that Colello was purchasing the Rolls Royce from Ecars by paying a down-payment of $42,825 with a remaining $148,000 due on delivery to be financed by Woodside." (Compl. ¶ 16, Trevisan Aff. ¶ 5).[7] This allegation alone does not suffice to show which defendant made which misrepresentations, when and where the statements were made and why they are false. In a case of multiple defendants, "'a plaintiff must plead with particularity by setting forth *separately* the acts complained of by each defendant.'" *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d

---

[6] For reference, in other cases plaintiffs have created "a listing" in their complaint "of the various statements forming the basis of the fraud claim." *Amusement Industry, Inc. v. Stern,* 693 F. Supp. 2d 327, 349 (S.D.N.Y. 2010); *In re Birstol-Myers Squibb Securities Litigation*, 312 F. Supp. 2d 549, 557 (S.D.N.Y. 2004).

[7] Unless otherwise indicated, identical or substantially similar allegations are made about the purchase of the Ferrari.

6

231, 248–9 (S.D.N.Y. 2006) (emphasis added) (quoting *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999)).

While itself not a sufficiently pleaded false statement, the allegation can be considered Woodside's "theory of the events giving rise to" its claim. *Amusement Industry, Inc.*, 693 F. Supp. 2d at 350. Looking to the other allegations in the Complaint and accompanying material for support of such a theory is fruitless. Woodside alleges that on January 22, 2018 it received an application "from Ecars with a request to enter into a sales financing agreement with Colello to fund the purchase of the Rolls Royce."[8] (Compl. ¶ 14; Trevisan Aff. ¶ 3). Ecars also "provided Woodside with Colello's driver's license, and a pre-owned purchase agreement showing that Colello was purchasing the Rolls Royce from Ecars, with Mag as the salesperson . . . for the transaction." (Compl. ¶ 15; Trevisan Affi. ¶ 4).[9] Presumably Woodside intends to allege the application and the pre-owned purchase agreement contained false statements. However, it does not specifically allege so. In addition, Woodside alleges that on January 24, 2018, "Mag provided documents purportedly evidencing that Ecars was the owner of the Rolls Royce." (Compl. ¶ 18; Trevisan Aff. ¶ 7). Presumably, again, Woodside intends to allege that Mag's representation that Ecars owned the Rolls Royce was false. But, again, such an allegation is not alleged clearly. Even if Woodside properly alleged these statements were false, the Rule 9(b) standard is still not met. Woodside notes when the statements were made but fails to allege where the statements were made or, more

---

[8] Woodside notes the application is "attached hereto as Exhibit A." (*Id.*) However, Exhibit A is dated February 5, 2018 and contains no mention of Ecars or Mag. (Dkt. No. 28-2 ("Ex. A")). It does appear to be an application signed – although not dated – by Colello to purchase a 2012 Rolls Royce.

[9] As noted previously, Woodside also alleges the pre-owned purchase agreement lists Mag as the "agent" of Ecars. (Compl. ¶¶ 15, 26). For the reasons stated previously, that allegation remains an unsupported legal conclusion. *See supra* note 3.

7

importantly, explain why the statements were false. Thus, these allegations do not pass muster under Rule 9(b).

### C. Conversion

The conversion claim is insufficiently plead to the extent that it relies on a theory of a fraudulent taking.[10] Moreover, the effect of the automatic stay in Waters-Falzo's Chapter 7 bankruptcy case raises serious concern. As noted previously, Woodside is not seeking judgment against Waters-Falzo, citing the bankruptcy stay. (Mot. for Default J. ¶ 9). Woodside dispenses with this issue in two short sentences. (*Id.*). However, more attention is necessary to fully address the issue.

The Bankruptcy Code creates an automatic stay in judicial proceedings against an individual who files for bankruptcy. 11. U.S.C. § 362(a)(1). However, the automatic stay extends to certain other proceedings involving the debtor's property. § 362(a)(2)-(8). Particularly relevant here, the stay applies to "any act to create, perfect, or enforce any lien against property of the estate." § 362(a)(4). In this action, Woodside seeks monetary relief from conversion of its security interest in the Ferrari purchased by Waters-Falzo, which would seem to fall under § 362(a)(4).

While generally a "suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing," the stay may extend to codefendants "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 287 (2d Cir. 2003) (citations omitted). "It is well established in this Circuit that even if the action is taken against a non-debtor the Court must examine the effect of

---

[10] When conversion "rests on an allegation of fraudulent taking," Rule 9(b) applies. *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998); *see also, O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). As noted previously, Woodside's allegations do not meet this standard.

8

the action, and if that effect 'would inevitably have an adverse impact on property of the bankrupt estate, such action should be barred by the automatic stay.'" *In re Saint Vincents Catholic Medical Centers of New York*, 429 B.R. 139 (Bankr. S.D.N.Y. 2010) (quoting *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987)).

Examining the effect of the conversion claim raises significant questions. In order to determine conversion, the Court would be required to determine whether Woodside has a security interest in the Ferrari and, if so, enforce it. If the Ferrari is the property of Waters-Falzo's estate,[11] Woodside's conversion claim would seem to be an attempt to circumvent the bankruptcy proceedings and enforce its alleged security interest unilaterally.

**D. Conspiracy**

Woodside separately alleges civil conspiracy to defraud and commit conversion. However, under New York law, civil conspiracy is not an independent cause of action. *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 85 A.D.3d 457, 458 (N.Y. App. Div. 1st Dep't 2011) (citing *Jebran v. LaSalle Bus. Credit, LLC*, 33 A.D.3d 424, 425 (N.Y. App. Div. 1st Dep't 2006)). "Proof of the conspiracy is only important to connect defendant with the transaction and to charge him with the acts and declarations of his co-conspirators, where otherwise he could not have been implicated." *Brackett v. Griswold*, 112 N.Y. 454, 454 (1889); *see also Gouldsbury v. Dan's Supreme Supermarket*, 154 A.D.2d 509, 510 (N.Y. App. Div. 2d Dep't 1989) ("Allegations of conspiracy are permitted only to connect the conduct of separate defendants with an otherwise actionable tort."). Even so, it is doubtful that Woodside adequately pleads a conspiracy. The allegations it

---

[11] Waters-Falzo lists the 2016 Ferrari California in her Chapter 7 Voluntary Petition as Schedule A/B property. (Chapter 7 Voluntary Petition at 11, In re Loretta Waters-Falzo, No. 19-26228 (VFP), (Bankr. D.N.J. Aug. 23, 2019)). A fact that Woodside and its counsel are no doubt aware of given that Woodside is listed as the creditor on the vehicle with attention to its attorneys in this case. (*Id.* at 21).

9

makes are broad and conclusory, which is not enough. *See, e.g., Faulkner v. City of Yonkers*, 105 A.D.3d 899, 901 (N.Y. App. Div. 2d Dep't 2013) (quoting *Goldstein v. Siegel*, 19 A.D.2d 489, 493 (N.Y. App. Div. 1st Dep't 1963)) ("'[a] bare conclusory allegation of conspiracy is usually held insufficient.'").

\* \* \*

However, as noted previously, the Court need not reach the sufficiency of the liability claims because Woodside fails to meet its burden of proving damages.

## II. Failure to Adequately Show Damages

While a court takes a plaintiff's well-pleaded factual allegations as true in a motion for default judgment, "entry of default does not relieve the plaintiffs of their burden of proving their damages; rather the court must conduct an inquiry and award only those damages that plaintiffs prove to a 'reasonable certainty.'" *3801 Beach Channel, Inc.,* 2010 WL 647199, at \*2 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "Plaintiff's evidentiary submissions and amounts alleged in the Complaint form the basis of the Court's independent damages analysis." *Xin Long Lin*, 2019 WL 3716199, at \*2.

Woodside's damages fall into three categories: (1) those related to the Rolls Royce, (2) those related to the Ferrari, and (3) a combination of both evolving from the conspiracy claim. None of the damages, however, are proven to a "reasonable certainty."

### A. Rolls Royce Damages

For each claim related to the Rolls Royce, Woodside requests "general damages as provided for in the Rolls Royce Agreement and under applicable law, in an amount approximating $145,633.78 in actual reimbursement, plus interest and attorney fees, costs and other legal

10

expenses." (Compl. ¶¶ 37, 48, 60). Nowhere in the Complaint or default judgment submissions, however, does Woodside indicate how it calculated this number, leaving the Court to tackle the Complaint's unsolvable word problem: Is the number Woodside requests (1) its calculation of "general damages as provided for in the [ ] Agreement and under applicable law," (2) a sum total of "actual reimbursement, plus interest and attorney's fees, cost and other legal expenses," or (3) referring to actual reimbursement only, leaving the amount for the other damages unspecified? In any event, Woodside does not allege any facts or provide any evidence to show the amount or basis of its general damages, attorney's fees, cost or other legal expenses as required to obtain such relief.[12]

The only support Woodside provides for its damages on the Rolls Royce Agreement is an affidavit from its Vice President of Operations asserting that it paid Ecars $148,000 on Colello's behalf, (Trevisan Aff. ¶ 9), and the Rolls Royce Agreement itself. (Ex. E at 1).[13] Strangely, Woodside fails to submit evidence of the wire transfer despite submitting such proof in relation to the Ferrari purchase. (Dkt. No. 28-8 ("Ex. G") at 4–5). Even if evidence of the wire transfer is not required to prove its damages, it is still impossible to determine Woodside's damages with "reasonable certainty" on the current Complaint and accompanying material. Any damages Woodside is entitled to would be offset by the payments already made on the Rolls Royce

---

[12] For example, courts in this district consistently require "[t]he party seeking [attorney] fees [to] submit contemporaneous time sheets showing counsel's work to support the rate and hours being claimed." *Francis v. Ideal Masonry, Inc.,* No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *12 (E.D.N.Y. Aug. 3, 2018) (citing *Riley v. City of New York*, No. 10-CV-2513 (MKB), 2015 WL 9592518, at *1 (E.D.N.Y. Dec. 31, 2015)); *see also Natale v. Country Ford Ltd.*, No. 10-CV-4128 (ADS) (GRB), 2014 WL 4537501, at *8 (E.D.N.Y. Aug. 20, 2014) (quoting *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 267 (E.D.N.Y. 2008)) ("[A]n attorney . . . who applies for court-ordered compensation . . . must document the application with contemporaneous time records. . . . These records should specify, for each attorney, the date, the hours expended and the nature of the work.").

[13] Even the Complaint fails to allege Woodside wired money to Ecars or anyone else, instead only alleging it "agreed to pay" the amounts. (Compl. ¶ 20).

11

Agreement. Yet Woodside fails to submit evidence of those payments despite doing so for payments on the Ferrari Agreement. (Dkt. No. 28-10 ("Ex. I") at 3–14). Woodside does not even allege how many payments were made, or in what amount, only that it received "several payments." (Compl. ¶ 30; Trevisan Aff. ¶ 12). Thus, Woodside fails to provide the necessary tools to calculate damages on its behalf.

### B. Ferrari Damages

The description of the Ferrari damages presents the same unsolvable word problem from the Rolls Royce allegations.[14] However, unlike the Rolls Royce allegations, Woodside provides documentation of its wire transfer to Ecars for the Ferrari, which shows it wired Ecars $192,301.90 on February 20, 2018. (Ex. G at 4–5). Strangely, the Complaint and Trevisan's Affidavit both allege Woodside agreed to pay Ecars $190,395 in connection with the Ferrari financing agreement. (Compl. ¶ 28; Trevisan Aff. ¶ 18). Woodside provides no explanation for the discrepancy between its allegations and the wire receipt. In addition, Woodside submits evidence of the payments it received on the Ferrari Agreement that offset its damages. (Ex. I at 3–14). The document submitted is an email with an attachment the email describes as "the transactions that were completed for each of the payments posted to the loan." (*Id.* at 1). The attachment shows four payments. (*Id.* at 3–14). Two of those payments were each for $1,860.48, and two were for $1,885.48. (*Id.*).[15] However, just as it did with the Rolls Royce claims, Woodside never indicates how many payments it received on the Ferrari Agreement – only that it received "several payments." (Compl. ¶ 30; Trevisan Aff. ¶ 21). Nowhere in the Complaint or accompanying material does Woodside indicate

---

[14] For the fraud and conversion claims in relation to the Ferrari Agreement, Woodside requests "general damages as provided for in the Ferrari Agreement and under applicable law, in an amount approximating $187,097.63 in actual reimbursement, plus interest and attorney fees, costs and other legal expenses." (Compl. ¶¶ 54, 66).

[15] Again, Woodside provides no explanation for this discrepancy.

that these four payments were the only payments it received on the Ferrari Agreement. Neither could one infer from the evidence submitted that the four payments are the only payments it received. The email and the attachment evidencing the four payments are dated July 17, 2018, but the last payment recorded was on July 2, 2018 leaving open the possibility that Woodside received more payments. (Ex. I).[16]

These issues aside, even working with the numbers available does not yield the amount Woodside requests. Based on the numbers provided, there are two possible calculations: (1) the amount Woodside alleges it wired to Ecars less the four payments documented; or (2) the amount indicated on the wire receipt itself, less the four payments documented. Neither calculation, however, produces Woodside's requested amount of $187,097.63. The calculations are approximately $3,000 or $4,000 lower than the requested amount.[17]

### C. Conspiracy Damages

For the civil conspiracy to commit fraud and conversion, Woodside requests "general damages, jointly and severally against all defendants, as provided for in the Rolls Royce Financing Agreement and the Ferrari Financing Agreement and under applicable law, in an mount approximating $332,731.41 in actual reimbursement, punitive damages, plus interest and attorney fees, costs and other legal expenses." (Compl. ¶ 70).

First and foremost, independent damages for civil conspiracy are not provided for under New York law. *Hoeffner*, 85 A.D.3d at 458. Civil conspiracy is not an independent cause of action and

---

[16] Woodside never indicates the last date of the payments. An important fact not only for calculating damages but also for alleging a conversion claim as Woodside's right to possession begins when Borrowers default. *See, Fleet Capital Corp. v. Yamaha Motor Corp., USA*, No. 01 Civ. 1047 (AJP), 2002 WL 31174470, at *23 (S.D.N.Y. Sept. 26, 2002) (collecting cases).

[17] The first calculation yields $184,809.98. ($192,301.90 – ($1,860.48 + $1,860.48 + $1,885.48 + $1,885.48). The second calculation yields $182,903.08 ($190,395 – ($1,860.48 + $1,860.48 + $1,885.48 + $1,885.48).

13

thus "cannot have its own independent measure of damages." *Id.* As discussed previously, "[p]roof of the conspiracy is only important to connect defendant with the transaction and to charge him with the acts and declarations of his co-conspirators, where otherwise he could not have been implicated." *Brackett*, 112 N.Y. at 454 (1889); *see also Gouldsbury*, 154 A.D.2d at 510 ("Allegations of conspiracy are permitted only to connect the conduct of separate defendants with an otherwise actionable tort.").

Moreover, even if Woodside could recover damages under the law, this request suffers the same deficiencies as those above. The amount is merely the sum of the Rolls Royce damages and the Ferrarri damages. Therefore, because Woodside fails to prove those amounts with "reasonable certainty," the sum of those amounts is necessarily doomed.

## CONCLUSION

For the reasons stated herein, I respectfully recommend that Woodside's Motion for Default Judgment be denied without prejudice to renewal upon a properly pleaded amended complaint and adequate proof of damages. Woodside is hereby directed to serve a copy of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service on CM/ECF. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Edward R. Korman within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

*Ramon E. Reyes, Jr.*
Ramon E. Reyes, Jr.
U.S. Magistrate Judge
Dated: February 28, 2020
Brooklyn, New York